IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: ) | |
| ) | |
| BROOKE CORPORATION, et. al, ) | Bankr. Case No. 08-22786 |
| ) | Chapter 7 |
| Debtors. ) | |
| _____) | |
| ) | |
| CHRISTOPHER J. REDMOND, ) | |
| Chapter 7 Trustee of Brooke Corp., ) | |
| Brooke Capital Corp., and ) | |
| Brooke Investments, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-2380-JWL |
| ) | (Adv. Case No. 10-06193) |
| THE PROGRESSIVE CORPORATION ) | |
| d/b/a PROGRESSIVE INSURANCE, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## MEMORANDUM AND ORDER

This adversarial proceeding comes before the Court on the motion by defendant The Progressive Corporation d/b/a Progressive Insurance to dismiss the claims asserted against it by plaintiff Bankruptcy Trustee in the second amended complaint (Doc. # 36). For the reasons set forth below, the motion to dismiss is **granted in part and denied in part**. The motion is granted as unopposed with respect to Count I of the second amended complaint and with respect to Count III to the extent based on state law, and those claims are hereby dismissed. The motion is denied with respect to Count II and

with respect to Count III to the extent based on federal law.

### I.    __Background__

Plaintiff is the Bankruptcy Trustee for debtors Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc. (collectively "Brooke"). The Trustee alleges the following facts. Brooke set up franchises of insurance agents who sold insurance policies written by various insurers, including defendant. Brooke Agency Services Company, LLC ("BASC"), an entity related to Brooke, entered into agency agreements with the insurers, under which BASC was obligated to hold premium payments from customers or franchisee agents in trust and then to remit those payments (less fees and commissions) to the insurers. In fact, monies representing premiums due to defendant were commingled with other funds in accounts of Brooke Capital Corporation ("Brooke Capital"), and Brooke Capital made payments to defendant to account for those premiums.

The Trustee seeks to avoid as fraudulent transfers payments from Brooke to defendant during the four-year period preceding the bankruptcy filing, pursuant to 11 U.S.C. § 548(a)(1)(B) and K.S.A. §§ 33-204(a)(2) and 33-205(a). The Trustee also seeks to avoid as preferences payments from Brooke to defendant during the ninety-day period preceding the bankruptcy filing, pursuant to 11 U.S.C. § 547. Defendant has moved to dismiss the second amended complaint in its entirety.

## II.    Standard for Motion to Dismiss

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.    Fraudulent Transfer (Count I)

In its previous Memorandum and Order of January 13, 2012 (Doc. # 32), the Court dismissed the Trustee's fraudulent transfer claim but granted the Trustee leave to file a second amended complaint to cure the pleading deficiencies noted by the Court. The Trustee did amend this claim.  In response to defendant's motion to dismiss the newly-amended claim, however, the Trustee states that he has now concluded, based on new information, that Count I is no longer a viable claim.  Accordingly, the Court grants as unopposed defendant's motion to dismiss Count I of the second amended complaint.

### IV.    Preference (Count II)

In Count II of the amended complaint, the Trustee seeks to avoid as preferences payments by Brooke Capital to defendant in the ninety days preceding the bankruptcy filing, pursuant to 11 U.S.C. § 547(b).  Defendant argues that the payments from Brooke Capital for premiums on insurance policies issued by defendant may not be recovered as preferential transfers because they did not constitute property of the debtors as a matter of law.  Specifically, defendant argues that Brooke Capital held those funds in trust for the benefit of defendant pursuant to contracts between the parties and pursuant to K.S.A. § 40-247, which provides that insurance agents and brokers shall be deemed to hold premiums in trust for the contracting insurance company.[1]

---

[1]Although the Trustee's second amended complaint includes some new
(continued...)

4

Section 547(b) allows a bankruptcy trustee to avoid certain transfers of property of the debtor. *See* 11 U.S.C. § 547(b); *Begier v. IRS*, 496 U.S. 53, 58 (1990). "Because the debtor does not own an equitable interest in property he holds in trust for another," such property does not constitute property of the debtor for purposes of Section 547(b). *See Begier*, 496 U.S. at 59.

The Trustee has alleged, and thus conceded, that BASC held premium payments in trust for defendant, and the Trustee does not dispute that trust property ordinarily does not constitute property of a debtor. The Trustee has further alleged, however, that BASC and Brooke Capital commingled the premium payments with other funds and that Brooke Capital's payments to defendant came from the commingled accounts. The Trustee thus argues that defendant bears the burden of establishing that it received payments of particular property that may be properly traced to trust funds, pursuant to the following rules set forth by the Tenth Circuit:

> It is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemption from a bankrupt estate must identify the trust fund in its original or substituted form.

> When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship. He must prove his title, identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property.

---

[1](...continued)
allegations supporting this claim, the gist of the claim remains the same. Defendant has not given any reason why it did not raise this argument in its motion to dismiss this claim as asserted in the first amended complaint.

> Once the trust relationship has been established, one claiming as a *cestui que trust* thereunder must identify the trust property in the estate, and, if such fund or property has been mingled with the general property of the debtor, sufficiently trace the trust property.  If the trust fund or property cannot be identified in its original or substituted form, the cestui becomes merely a general creditor of the estate.
>
> This principle holds true regardless of whether the funds are held in an express or constructive trust.

*Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs., Inc.)*, 48 F.3d 470, 474 (10th Cir. 1995) (citations and internal quotations omitted).

Defendant argues it has been relieved of having to comply with any such tracing requirement by the Supreme Court's opinion in *Begier v. IRS*.  In that case, the debtor had made voluntary payments of certain "trust-fund taxes" to the IRS, which taxes the debtor had held in trust for the IRS pursuant to 26 U.S.C. § 7501.  *See Begier*, 496 U.S. at 55-56.  The Supreme Court held that although the payments had come from commingled accounts, the debtor's voluntary pre-petition payments to the IRS of the amounts owed and held in trust did not constitute a transfer of the debtor's property and satisfied any tracing requirement.  *See id.* at 67.  Defendant argues that because a statutory trust was also imposed in the present case, any tracing requirement has been satisfied by Brooke Capital's voluntary payments of the amounts owed to defendant for premiums.  Accordingly, defendant argues that it did not receive property of the debtors as a matter of law, and that the Trustee has therefore failed to state a viable preference claim under Section 547(b).

A closer examination of *Begier*, however, shows the fallacy of defendant's

6

argument.  In that case, the Supreme Court first held that the tax statute, Section 7501, did impose a statutory trust the moment the taxes were withheld by the debtor, despite the absence of a general segregation requirement in the statute.  *See id.* at 61-62.  That conclusion did not complete the Court's task, however:

> Our holding that a trust for the benefit of the IRS existed is not alone sufficient to answer the question presented by this case:  whether the *particular dollars* that [the debtor] paid to the IRS from its general operating accounts were "property of the debtor."  Only if those particular funds were held in trust for the IRS do they escape characterization as "property of the debtor."  All § 7501 reveals is that [the debtor] at one point created a trust for the IRS; that section provides no rule by which we can decide whether the assets [the debtor] used to pay the IRS were assets belonging to that trust.

*Id.* at 62.  The Court first cited the common-law principle that because "a trust is created *in property*," it "therefore does not come into existence until the settlor identifies an ascertainable interest in property to be the trust res."  *Id.* (citations omitted).  The Court noted, however, that Section 7501 was "radically different from the common-law paradigm" because it expressly created a trust in the "amount" of tax collected or withheld, instead of creating a trust in particular property (as in common-law trusts).  *See id.*  Thus, the Court held that common-law tracing rules, designed for the usual type of trust, were unhelpful in the particular context of federal trust-fund taxes.  *See id.* at 62-63.  The Court stated that lower courts should apply "reasonable assumptions" to govern the tracing of funds, and it concluded, based on its examination of specific legislative history for the Bankruptcy Code relating to Section 7501, that one such assumption was that a voluntary payment of trust-fund taxes from the debtor's assets is not a transfer of

the debtor's property.  *See id.* at 63-67.

Although the present case involves a statutory trust, the particular statute provides for the imposition of a trust on specific property, namely money received as insurance premiums.  *See* K.S.A. § 40-247(a).  Thus, the vital element from *Begier* that distinguished its statutory trust from other common-law trusts—a trust involving an "amount" instead of a specific trust res—is not present here.  Thus, there is no basis to alter the usual rules that would govern commingled trust funds.  Moreover, the *Begier* Court's rule about voluntary payments providing the necessary nexus to the original trust funds was based on specific legislative history relating to Section 7501, and defendant has not identified any similar legislative history applicable to the present case.  Thus, *Begier*'s limited holding, applying specifically to trust-fund taxes, would not apply to this case.

In arguing that *Begier* should apply here, defendant relies most heavily on *Suwannee Swifty Stores, Inc. v. Georgia Lottery Corp. (In re Suwannee Swifty Stores, Inc.)*, 266 B.R. 544 (Bankr. M.D. Ga. 2001), *aff'd*, 67 F. App'x 583 (11th Cir. 2003).  In that case, the bankruptcy court held that the debtor's voluntary payments of lottery proceeds, which were subject to a statutory trust, overcame any tracing requirement that would otherwise apply to commingled trust funds.  *See id.*  The court concluded that the lottery statute created a trust in an "abstract amount," as in *Begier*, and it therefore applied the holding of that case.  *See id.* at 552-53.  In choosing to apply *Begier*, the court in *Suwannee* found inconsequential the fact that the Bankruptcy Code gives special

8

attention to the type of tax fund at issue in *Begier*. *See id.* at 550.[2]  The Court disagrees

with that analysis.  The Supreme Court did not do away with tracing requirements for

commingled trust funds in *Begier*; rather, it held that in one specific case, voluntary

payment of the amount owed provided a sufficient nexus ("reasonable assumption") to

satisfy the general tracing requirement that the property paid by the debtor represent the

property held in trust by the debtor. *See Begier*, 496 U.S. at 66-67.  Moreover, the Court

based that conclusion on specific legislative history not applicable in the present case.

The Court also made a point of noting that the statute in that case contained unusual

language that created a trust not in particular property, but in the "amount" owed, and

that common-law tracing rules were thus unhelpful. *See id.* at 62-63.  That distinction

would lose all meaning if any trust in particular payments, such has the trust at issue

here, received similar treatment.[3]

The other cases cited by defendant may include citations to *Begier*, but none

addresses this issue of whether *Begier* relieves a transferee of complying with the usual

tracing requirements in the context of any statutory trust. *See Owner Operator*

*Independent Drivers Ass'n, Inc. v. Comerica Bank (In re Arctic Express, Inc.)*, 636 F.3d

---

[2]The Eleventh Circuit affirmed without opinion. *See* 67 F. App'x 583.

[3]In addition, the *Suwannee* court specifically noted that the lottery statute at issue in that case created a trust in an "abstract amount," as in *Begier*. *See Suwannee*, 266 B.R. at 552-53.  In the present case, the statute does not create a trust in abstract amounts, but instead creates a trust in specific premium payments. *See* K.S.A. § 40-247(a).

781, 797 (6th Cir. 2011) (noting that under *Begier* an absence of segregation does not necessarily mean that no trust was created; does not address issue of whether particular funds were property of the debtor; no analysis of language of trust statute); *Lowe v. Palmetco Inc. (In re N.A. Flash Foundation Inc.)*, 298 F. App'x 355, 360-61 (5th Cir. 2008) (unpub. op.) (refusing to address issue whether commingled trust funds could be considered property of the debtor); *Owner-Operator Independent Drivers Ass'n, Inc. v. Huntington Nat'l Bank (In re Intrenet, Inc.)*, 273 B.R. 153, 157 (Bankr. S.D. Ohio 2002) (no analysis of any commingling issue).

Other courts have recognized that *Begier* did not create some sort of exemption for commingled statutory trust funds.  For instance, in *Meoli v. Kendall Electric, Inc. (In re R.W. Leet Electric, Inc.)*, 372 B.R. 846 (B.A.P. 6th Cir. 2007), the court applied *Begier*'s holding that a transferee must establish not only a trust, but also that the particular payments are traceable to the trust funds.  *See id.* at 853 (citing *Begier*, 496 U.S. at 62).  In requiring tracing to statutory trust funds, the court specifically concluded that in *Begier* the Supreme Court "implicitly rejected the notion that the making of payments from a commingled account affects re-segregation."  *Id.* at 855 n.2 (quoting *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 601 (B.A.P. 2d Cir. 2000)).  Thus, the court essentially rejected the same argument made here based on *Begier*.

Another court, in rejecting a similar argument under *Begier*, has recently noted that courts post-*Begier* have generally limited that case's holding to the narrow context

10

in which it was decided and thus "have continued to require tracing outside the trust-fund tax context." *See Appalachian Oil Co. v. Virginian Travel Plaza, Inc. (In re Appalachian Oil Co.)*, 2012 WL 1205640, at *8-9 (Bankr. E.D. Tenn. Apr. 11, 2012) (citing cases). The Court agrees with the seeming majority in so limiting the holding of *Begier*.

As noted above, the Tenth Circuit requires a transferee to trace payments back to a trust fund to take those payments outside the property of the debtor's estate. The Court concludes that defendant has failed to show that in this case *Begier* either creates an exception to that rule or conclusively establishes the necessary tracing. Defendant argues that the Tenth Circuit cases do not involve statutory trusts. The Tenth Circuit has explicitly held that its tracing requirement applies to both constructive and express trusts, however, and defendant has not explained why a trust created by statute should be treated differently in this context than a trust created expressly by agreement. *See, e.g.*, *Meoli*, 372 B.R. at 854 (tracing requirement should apply with equal force to a constructive trust and to a statutory trust, "since in both instances trust money, having 'no extrinsic characteristics of its own,' becomes unidentifiable when it is commingled with a debtor's non-trust monies in a general account") (citing *Lovett v. Homrich Inc. (In re Philip Servs. Corp.)*, 359 B.R. 616 (Bankr. S.D. Tex. 2006)).

Defendant may very well be able to establish a trust here and satisfy the Tenth Circuit's tracing requirements for commingled trust funds. It has not shown at this stage, however, that the voluntary nature of the payments from Brooke Capital obviates the

need for any such showing as a matter of law.    Accordingly, the Court denies
defendant's motion to dismiss this claim.[4]


## V.    <u>Counts III</u>

Count III of the second amended complaint does not assert an independent cause
of action, but instead relates to the recovery of avoidable transfers to defendant pursuant
to 11 U.S.C. § 550 and K.S.A. § 33-207.    Defendant's sole argument relating to Count
III is that it should also be dismissed if Counts I and II, on which it depends, are
dismissed.    The Court has dismissed the Trustee state-law claim asserted in Count I, and
the Trustee has not opposed the dismissal of Count III to the extent based on a Kansas
statute; thus, Count III is dismissed to the extent based on state law.    The Court has
denied defendant's motion for dismissal of Count II, however; therefore, the Court also
denies the motion for dismissal of Count III to the extent based on the federal statute.


IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion
to dismiss the second amended complaint (Doc. # 36) is **granted in part and denied in
part**.    The motion is granted as unopposed with respect to Count I of the second
amended complaint and with respect to Count III to the extent based on state law, and

---

[4]In light of this ruling, the Court need not address at this time the Trustee's
arguments concerning the Kansas trust statute's applicability, the type of guarantee given
by Brooke Capital, or the issue of defendant's waiver of any contractual trust obligation.

those claims are hereby dismissed.  The motion is denied with respect to Count II and

with respect to Count III to the extent based on federal law.

IT IS SO ORDERED.

Dated this 12th day of June, 2012, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge

13